Pfeifer, J.,
dissenting.
{¶ 35} This court today defers to the Orwellian conclusion of the Public Utilities Commission of Ohio (“PUCO”) that only by removing competition can Ohio have a fully competitive marketplace for the sale of natural gas. The approximately 20 percent of choice-eligible commercial customers of intervening appellee East Ohio Gas Company, d.b.a. Dominion East Ohio (“Dominion”) that used standard choice offer (“SCO”) service to purchase their natural gas — a service tied to prices derived from the New York Mercantile Exchange and thus tied to the true market price of the commodity — will be instead forced into a relationship with a retail dealer. Gas marketers get a customer without having to persuade the customer that the marketer is the right choice for the particular user. That is not competition; that is coercion.
{¶ 36} PUCO issued the order in this case under the authority of R.C. 4929.08(A), which provides that PUCO “upon its own motion or upon the motion of any person adversely affected by [an] exemption * * * may abrogate or modify any order granting such an exemption” under certain conditions. The conditions cited by PUCO in this case are those contained in R.C. 4929.08(A)(1), which allows modification of the order when “[t]he commission determines that the findings upon which the order was based are no longer valid and that the abrogation or modification is in the public interest.” In this case, I would find that neither condition set forth in R.C. 4929.08(A)(1) is applicable.
{¶ 37} As for the first condition, PUCO found that the exemption contained findings that were no longer valid, determining that “phase two no longer provides any potential for further exploration of the benefits of market-based pricing for natural gas services” and was “hindering the development of a fully competitive marketplace.” Pub. Util. Comm. No. 12-1842-GA-EXM, at 8 (Jan. 9, 2013). This was at a point when over 80 percent of Dominion’s nonresidential customers had chosen a competitive retail natural-gas supplier or to participate in a government-aggregation program. But it is apparent from the original order that phase two was never expected to complete the exit of Dominion from the *277 merchant function. PUCO anticipated that further action would be necessary, and it let Dominion know that that action would require a separate application:
Dominion must seek, through a separate application in the future, Commission approval before moving from the SCO commodity service market to a market in which choice-eligible customers will be required to enter into a direct retail relationship with a supplier or governmental aggregator to receive commodity service, i.e., full-choice commodity service market.
In re Application of the E. Ohio Gas Co. for Approval of a Gen. Exemption of Certain Natural Gas Commodity Sales Servs., Pub. Util. Comm. No. 07-1224-GA-EXM, at 15 (June 18, 2008).
{¶ 38} It was accepted as fact that phase two was not going to finish the job and that a third phase would be necessary. That phase two would plateau was baked into the cake. There has been no change in the validity of PUCO’s findings: it was clear in the order that phase two would fall short.
{¶ 39} Further, the modification of the order is not in the public interest. It is in the interest of Dominion and marketers. The SCO is comparatively popular. It is an option for entities that do not want to make a decision on a natural-gas provider, those who do not want to enter into a contract, and those who trust the market price rather than a marketer’s price. The SCO price stands as a benchmark for fairness for customers who have entered into arrangements with marketers. It lessens concern among customers that marketers will form a price-fixing cabal, since the SCO price is tied to what the market is for natural gas. It builds trust in the entire system. Plus, as a practical matter, SCO service has proved to be cheaper than other service.
{¶ 40} The modification of the order makes commercial users guinea pigs for Dominion’s eventual withdrawal from the merchant function for residential customers. Knowing the difficulty it will face in achieving a mandatory requirement that residential customers engage with a marketer, this modification is an attempt by Dominion and marketers to get to that requirement incrementally. No doubt, natural-gas marketers will be on their best behavior until the mother lode of residential customers becomes available for forced relationships. After that, the inertia of customers who are reluctant to make a choice — or to wade through the blizzard of postcard solicitations of natural-gas marketers — will be considered a good thing by the entity lucky enough to have gained their business.
*278 Colleen L. Mooney and David C. Rinebolt, for appellant.
Michael DeWine, Attorney General, William L. Wright, Section Chief, and Steven L. Beeler, Assistant Attorney General, for appellee Public Utilities Commission of Ohio.
Whitt Sturtevant, L.L.P., Mark A. Whitt, Andrew J. Campbell, and Gregory L. Williams, for intervening appellee East Ohio Gas Company.
Vorys, Sater, Seymour & Pease, L.L.P., M. Howard Petricoff, Stephen M. Howard, and Michael J. Settineri, for intervening appellees Ohio Gas Marketers Group and Retail Energy Supply Association.
Bruce J. Weston, Larry S. Sauer, and Joseph P. Serio, for amicus curiae, Ohio Consumers’ Counsel.